# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF CARLSBAD; CARLSBAD PUBLIC FINANCING AUTHORITY,<br><br>Plaintiffs,<br><br>vs.<br><br>PRINCE REZA SHAH,<br><br>Defendant. | CASE NO. 08CV1211 JLS (WMc)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (2) DECLARING PLAINTIFF AS THE RIGHTFUL OWNER OF THE TRADEMARKS AND LOGO AT ISSUE (3) AUTHORIZING USPTO TO DENY REGISTRATION OF DEFENDANT'S APPLICATIONS AND REGISTER PLAINTIFF'S APPLICATIONS.**<br><br>(Doc. No. 18.) |

In the present action, the City of Carlsbad ("Plaintiff") alleges various claims against Prince Reza Shah ("Defendant"), including copyright infringement, cybersquatting, unfair competition in violation of the Lanham Act; unfair competition in violation of California's Business and Professional Code §17200, and common law unfair competition. Plaintiff also seeks a declaratory judgment regarding who holds trademark rights in various marks at issue in the case. In return, Defendant filed a counterclaim in which he seeks a declaration that his trademark rights are superior to that of Plaintiff's, and an injunction against Plaintiff from further utilizing the marks.

The only issue presently before the Court is Plaintiff's motion for partial summary judgment, which contends that the claim for relief for declaratory judgment regarding trademark rights contains

1 no genuine issue of material fact and is ripe for summary judgment. For the reasons stated below, the
2 Court **GRANTS** Plaintiff's motion for partial summary judgment. The Court further **DECLARES**
3 that Plaintiff is the rightful owner of the trademarks and logo at issue in the present case.
4 Additionally, the Court **AUTHORIZES** the United States Patent and Trademark Office to register
5 Plaintiff's pending trademark applications[1] and to deny registration of Defendant's application of the
6 marks and Marbrisa logo.[2]

7 In addition, the Court **GRANTS** Plaintiff's request for judicial notice.

## BACKGROUND

9 In 1998, the City of Carlsbad acquired land on which it planned to develop a golf course.
10 (Compl. ¶ 10.) Construction began in 2005. (*Id.*) Also that year, the City initiated a public
11 campaign soliciting names for the golf course, contacting marketing consultants and experts.
12 (Compl. ¶ 11.) On June 6, 2006, the City held a meeting of the Carlsbad City Council which was
13 open to the public. (Compl. ¶ 12.) At this meeting, the City announced that it would publicly
14 announce the chosen name for the golf course on October 18, 2006 and, in the meantime, solicited
15 proposed names from the public (it received over 700 proposals). (*Id.*) On September 11, 2006,
16 the City, through an agent, registered the domain name "thecrossingsatcarlsbad.com." (Hammann[3]
17 Decl. ¶ 3.)

18 The City formally announced at an open City Council meeting on October 18, 2006, that
19 the selected name was "The Crossings at Carlsbad." (Hammann Decl. ¶ 4.) This was reported in
20 the local newspaper, the North County Times, that same day (Hammann Decl. ¶ 4-5.) The name
21 was formally adopted by the City Council on November 21, 2006. (Hammann Decl. ¶ 6.) This
22 was followed by a press release and a newspaper article in the San Diego Union Tribune,
23 specifically identifying "The Crossings at Carlsbad" as the name of the golf course. (Hammann
24 Decl. at ¶¶ 7-8; NOL ISO MSJ, Ex. 1 & 32.) The City also used the acronym "TCAC" to

---

[1] Serial Nos. 77/230889, 77/230864, 77/240017, 77/238790, 77/235270, 77/326199, 77/263971, 77/263925, and 77/263996.

[2] Serial Nos. 77/054111, 77/054126, 77/061706, 77/202046, 77/2037554, and 77/284659.

[3] Conrad "Skip" Hammann is the Director of Special Projects for the City of Carlsbad.

1  identify the golf course and related goods.  (Hammann Decl. at ¶ 8.)[4]

2  Also on November 21, 2006 and the day after, Shah registered the domain names
3  "www.thecrossingatcarlsbad.com," www.golfthecrossingatcarlsbad.mobi" and "www.tcac.mobi."
4  (NOL ISO Opp., Ex. B at 17 & Ex. E at 159.)  Shah has no relationship with the City or the golf
5  course, nor has he been involved in any prior golf-related businesses of any kind.  (Mot. ISO MSJ
6  at 2; Opp. to MSJ at 8.)  In Shah's deposition, he admits that he was at the public City Council
7  meeting when the name "The Crossings at Carlsbad" was discussed.  (Shah Depo. at 12:15 -
8  13:20.)

9  Starting November 30, 2006, Shah filed a series of Intent to Use trademark applications in
10 the United States Patent and Trademark Office ("USPTO").  (Compl. ¶ 24; NOL ISO MSJ, Exs.
11 13 - 17.)  The first five trademark applications related to the marks "The Crossings at Carlsbad,"
12 and "TCAC"  (*Id.*)  The applications were filed for use on clothing, golf balls, golf courses, golf
13 clubs, and golf tees.  (*Id.*)  The first five applications, which involved no logo, were filed as
14 follows:

15 (1) November 30, 3006 - "The Crossings at Carlsbad" - for clothing, namely men's and
16 women's golf caps and golf shirts

17 (2) November 30, 2006 - "TCAC" - for clothing, namely men's and women's golf caps and
18 golf shirts

19 (3) December 11, 2006 - "TCAC" - for golf balls

20 (4) June 7, 2007 - "The Crossings at Carlsbad" - for golf courses

21 (5) June 12, 2007 - "The Crossings at Carlsbad" - for golf balls, golf clubs, and golf tees

22 On or about February 5, 2007, the City Council was formally presented at a public meeting
23 with the wave-like logo that officially became the logo for the golf course on March 1, 2007.[5]
24 (Hammann Decl. at ¶ 9.)  The logo was published at the official launching of the
25 www.thecrossingsatcarlsbad.com website in mid-March 2007.  (Hammann Decl. at ¶ 10.)

26 ─────────────

27 [4] The timing of when the use of "TCAC" began is unclear.

28 [5] The City alleges that the development of the logo began in December 2006.  (Hammann Decl. ¶ 9.)

1   On August 24, 2007, Plaintiff applied for trademarks related to the logo.  (NOL ISO MSJ,
2  Exs. 25-27.)  On September 20, 2007, Defendant filed an intent to use application for a Logo
3  almost exactly the same as Plaintiff's.  The only difference was that Defendant's application
4  inserted the name "Mabrisa" instead of "Carlsbad."  (*Compare* NOL ISO MSJ, Ex. 18 *with* NOL
5  ISO MSJ, Exs. 25-27).  Defendant admitted that the designed was influenced by Plaintiff's logo.
6  (Def. Depo. at 151-153.)

7   Beginning on July 16, 2007 and ending on August 24, 2007, Plaintiff filed a series of nine
8  intent to use applications for "The Crossings at Carlsbad," "TCAC" and the logo.  On March 31,
9  2008, the City obtained the copyright in the logo and exclusive rights and privileges to the
10  copyright.  (Request for Judicial Notice, Ex. E.)

**LEGAL STANDARD**

12  Summary judgment is properly granted when "there is no genuine issue as to any material
13  fact and . . .  the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).
14  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient
15  to establish the existence of an element essential to that party's case, and on which that party will
16  bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party
17  moving for summary judgment bears the initial burden of establishing an absence of a genuine
18  issue of material fact.  *Id.* at 323.  Where the party moving for summary judgment does not bear
19  the burden of proof at trial, it may show that no genuine issue of material fact exists by
20  demonstrating that "there is an absence of evidence to support the non-moving party's case."  *Id*.
21  at 325.

22   Once the moving party meets the requirements of Rule 56, the burden shifts to the party
23  resisting the motion, who "must set forth specific facts showing that there is a genuine issue for
24  trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Without specific facts to
25  support the conclusion, a bald assertion of the "ultimate fact" is insufficient.  *See Schneider v.*
26  *TRW, Inc.*, 938 F.2d 986, 990-91 (9th Cir. 1991).  A material fact is one that is relevant to an
27  element of a claim or defense and the existence of which might affect the outcome of the suit.  The
28  materiality of a fact is thus determined by the substantive law governing the claim or defense.

1  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.
2  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing
3  *Anderson,* 477 U.S. at 248).  When making this determination, the court must view all inferences
4  drawn from the underlying facts in the light most favorable to the nonmoving party.  *See*
5  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Credibility
6  determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts
7  are jury functions, not those of a judge, [when] . . . ruling on a motion for summary judgment."
8  *Anderson*, 477 U.S. at 255.

## DISCUSSION

10  "District courts have broad authority to review trademark decisions by the U.S. Patent and
11  Trademark Office (PTO), both before and after registration of the mark."  *Aktieselskabet v. Fame*
12  *Jeans, Inc.*, 525 F.3d 8, 12 (D.C. Cir. 2008).  "In addition, district courts may authorize the PTO to
13  register or to deny registration to a pending mark."  *Id.* (citing 15 U.S.C. § 1071(b)(1)).
14  Under the Lanham Act, "[a] person who has a bona fide intention, under circumstances
15  showing the good faith of such person, to use a trademark in commerce may request registration of
16  its trademark."  15 U.S.C. § 1051(b)(1).  "The term 'use in commerce' means the bona fide use of
17  a mark in the ordinary course of trade, and not made merely to reserve the right in a mark."  15
18  U.S.C. § 1127.  Therefore, lack of such intent is a ground on which a party may oppose the
19  registration.  *See Aktieselskabet*, 525 F.3d at 12.  Plaintiff in this case is doing just that – arguing
20  that Defendant offers no objective evidence of the bona fide intent to use the marks at the time the
21  application was filed, and therefore there is no genuine issue of material fact regarding the
22  (in)validity of the application to register the marks.

23  **i.    Relevant Case Law**

24  In *Aktieselskabet*, the D.C. Circuit noted that "the [Trademark Trial and Appeals Board]
25  has held § 1(b) [of the Lanham Act] to require both actual intent to use a mark in commerce and
26  evidence, contemporary with the application, that objectively demonstrate that intent," and
27  explicitly agreed with this interpretation.  *Aktieseskabet*, 525 F.3d at 21 (citing *Wet Seal, Inc. v.*
28  *FD Mgmt., Inc.,* 82 U.S.P.Q.2d 1629, 1633 (T.T.A.B. 2007)).  The D.C. Circuit went on to find

that "Congress made clear that a 'bona fide intent to use' also involves an objective standard by specifying there must be 'circumstances showing . . . good faith.'"[6] *Id.* at 21.

The Trademark Trial and Appeal Board ("TTAB" or "Board") has further qualified what evidence a nonmoving party must present in order to defeat a motion for summary judgment based on lack of intent to use. In *Commodore Electronics Ltd. v. CBM Kabushiki Kaisha*, both parties filed motions for summary judgment regarding the notice of opposition to the applicant's registration. 26 U.S.P.G.2d 1502 (T.T.A.B. 1993). The Board stated that the issue was "whether the absence of any documents evidencing applicant's claimed intention to use its mark may be sufficient to constitute objective proof of a lack of a bona fide intention to use." *Id.* at 1506. The Board went on to note that the bona fide intent requirement focused on an "objective good-faith test." *Id.* The Board stated:

> Although admittedly a close question, we hold that absent other facts which adequately explain or outweigh the failure of an applicant to have any documents supportive of or bearing upon its claimed intent to use its mark in commerce, the absence of any documentary evidence on the part of an applicant regarding such intent is sufficient to prove that the applicant lacks a bona fide intention to use its mark in commerce as requirement by Section 1(b) [of the Lanham Act]."

*Id.* at 1507.

Ultimately, however, the Board did not grant the motion for summary judgment. Instead, the Board found that "as a general rule, the factual question of intent is particularly unsuited to disposition on summary judgment." *Id.* at 1508 (quoting *Copelands' Enterprises Inc. v. CNV Inc.*, 945 F.2d 1562 (Fed Cir. 1991)). Understandably, Defendant makes much of this, arguing that *Commodore* actually goes against Plaintiff's argument that summary judgment is warranted. (Opp. to MSJ at 6-7 ("Thus, at bottom *Commodore* is not a precedent that supports the City's contention that it is entitled to summary judgment; it is instead a precedent that supports Mr. Shah's position that summary judgment would be particularly inappropriate here.").) Plaintiff, however, counters this contention in two rather persuasive ways.

First, the procedural posture in *Commodore* was different than in the present case. In *Commodore*, the applicant was seeking summary judgment and the opposer was seeking to amend

its notice of opposition to assert a lack of documentary evidence supporting the bona fide intent. Thus, the Board denied the applicant's request for summary judgment and allowed the opposer to amend its opposition. This amendment created a material issue of fact regarding the bona fide intent. Additionally, the Board ordered a discovery period directed solely to this issue. In contrast, in the present case, Plaintiff is seeking summary judgment and Defendant (the applicant) has had ample opportunity to produce documentary evidence of his intent to use at the time he filed his application. As discussed more below, Defendant has offered no such objective evidence, but only a subjective statement of his intent.

Second, the proposition that summary judgment is appropriate when the applicant fails to produce any documentary evidence of bona fide intent to use the mark has been reaffirmed in more recent cases heard by the TTAB.[7] For example, in *Honda Motor Co. v. Winkelmann*, 90 U.S.P.Q.2d 1660 (T.T.A.B. 2009), the Board noted that, in general, questions of intent should not be decided on summary judgment. But, it went out to state: "The Board has held, however, that the absence of any documentary evidence regarding an applicant's bona fide intention to use a mark in commerce is sufficient to prove that an applicant lacks such intention as required by Section 1(b) of the Trademark Act, unless other facts are presented which adequately explain or outweigh applicant's failure to provide such documentary evidence." *Id.* at 1662 (citing *Commodore,* 26 U.S.P.Q.2d at 1507). Thus, the Board focused "on the entirety of the circumstances, as revealed by the evidence of record" and held that "viewing [the] evidence in the light most favorable to applicant, . . . there is no evidence of applicant's bona fide intent to use the mark in the United States to identify the claimed goods."[8] *Id.* at 1663-64. The Board, therefore,

---

[7] In addition to the two cases discussed above, Plaintiff cites to *DC Comics and Marvel Characters, Inc. v. Silver*, TTAB Opposition No. 91/176,744 (TTAB Aug. 21, 2009) in its Reply. This case is not on Westlaw, but is attached as an exhibit to Plaintiff's reply brief. It clearly states at the top that it is not TTAB precedent. Thus, while it does affirm *Commodore*'s proposition above, it can not legally be considered or cited in these proceedings. Regardless, the Court finds that *Honda Motors* and *L.C. Licensing* are sufficient to support Plaintiff's argument that *Commodore* is distinguishable from the present case and remains applicable here.

[8] Moreover, the Board focused on the applicant's answers to interrogatories and requests for documents as evidence of the lack of documentary evidence. *Honda Motor Co.*, 90 U.S.P.Q.2d at 1662-63. These interrogatories and answers are strikingly similar to those in this case used by Plaintiff in support of its argument for lack of documentary evidence.

granted the opposer's motion for summary judgment. *Id.* at 1664.

Similarly, in *L.C. Licensing, Inc. v. Berman*, the Board reiterated the above quoted statement in *Commodore*. 86 U.S.P.Q.2d 1883, 1891 (T.T.A.B. 2008). The Board then went on to analyze the applicant's answer to various interrogatories, all of which indicated that he had no documents evidencing his alleged intent to use the marks for which he was seeking to register, just as in the present case. The Board found that "[t]he mere assertion of an intent to use the mark without corroboration of any sort, whether documentary or otherwise, is not likely to provide credible evidence to establish a bona fide intention to use the mark." *Id.* at 1892. Thus, the Board sustained the opposer's opposition to the registration for lack of bona fide intention to use the mark in commerce. *Id.*

Accordingly, the Court finds that the statement in *Commodore* that summary judgment is not appropriate for deciding issues of intent has been adequately clarified by the more recent cases of *Honda Motor* and *L.C. Licensing*. Thus, the Court must then turn to whether summary judgment is appropriate under the facts and evidence produced in this case.

### ii. **Defendant Has Not Produced Any Documentary Evidence of His Intent to Use the Marks**

Under the above-cited case law, Defendant must produce either 1) objective documentary evidence of his intent to use the marks in commerce or 2) a valid explanation as to why no evidence has been produced under a totality of the circumstances analysis. *See Honda Motor Co. v. Winkelmann*, 90 U.S.P.Q.2d 1660 (T.T.A.B. 2009) ("The Board has held, however, that the absence of any documentary evidence regarding an applicant's bona fide intention . . . is sufficient . . . , unless other facts are presented which adequately explain or outweigh applicant's failure to provide such documentary evidence." *Id.* at 1662 (citing *Commodore,* 26 U.S.P.Q.2d at 1507)). After examining the record, the Court finds that Defendant has not met either burden.

First, in response to Interrogatories, Defendant acknowledged that he does not have any evidence other than the trademark applications to support his intent to use the marks. When asked to state all facts and produce any documents that relate to Defendant's contention that he had a bona fide intent to use the marks at the time of the application, Defendant responded that "[h]e

knows of no external facts that would or could relate to that contention" and that the only document related to that contention was the "applications to register the Marks in the USPTO." (NOL ISO MSJ, Exs. 29 & 30, Interrogatories and Responses Nos. 11-12.) Further, in Defendant's deposition, he testified that the first step he took in relation to using the marks was *after* the trademark application had been filed with the USPTO. (Def. Depo. at 107-08.) And, Defendant submitted fictitious business name statements and created corporations utilizing the name "The Crossings at Carlsbad" only after the applications had been filed. (*Id.* at 146.) In fact, Defendant produced only seventeen pages of documents, testifying that these are the only documents that relate to the law suit. (*Id.* at 41; Def. Depo. Exs. 6&7.) Defendant makes no argument that these documents support his intent to use the marks at the time of the application.

Defendant counters the argument that no documentary evidence has been produced by pointing to his own statement that such intent existed. In his deposition, Defendant alleges that he had in fact taken preliminary or contemporaneous actions to develop a business using the marks. He testified that he decided on Carlsbad Village as the location of the store prior to the application, consulted with a designer and silk-screener the same week as he filed the application, and then began creating merchandise over the next few months.[9] (Def. Depo. at 85-89.)

It is clear that Defendant's statement alone is not sufficient to defeat the motion for summary judgment because it is subjective evidence, not objective evidence. *Aktieseskabet*, 525 F.3d at 21 (agreeing with the TTAB's holding that "§ 1(b) . . . require[s] both actual intent to use a mark in commerce and evidence, contemporary with the application, that objectively demonstrate that intent"; *see also id.* ("Congress made clear that a 'bona fide intent to use' also involves an objective standard by specifying there must be 'circumstances showing . . . good faith.'") Moreover, as Plaintiff points out, these activities which allegedly show Defendant's intention to

---

[9] In his opposition to the motion for summary judgment, Defendant contends that he took other "preliminary steps to develop the business," but the record is clear that most of these steps, including the filing of the fictitious business name registration and corporation formation, were taken *after* the application had been filed, not "preliminary" to it. (*See* Def. Depo. at 88-91.) Further, at oral argument, Defendant argued that these actions, though taken after the applications were filed, should still be evidence of his intent to use at the time of the application. This, however, is not the law. The standard is whether there was objective evidence *contemporaneous* with the filing of the applications. *See Aktieseskabet*, 525 F.3d at 21. Moreover, documentary evidence of these actions have only been testified to in Defendant's deposition, but the Court has seen no physical evidence supporting these statements.

use the marks, including the alleged designs and merchandise, should be accompanied by documentary evidence, "such as bank statements, purchase orders, invoices, and written communications. However, despite numerous interrogatories and requests for production of documents, [Defendant] has failed to produce a single piece of documentary evidence regarding these alleged activities." (Reply to Opp. at 3.)

Defendant also argues in his opposition to the motion for summary judgment that other facts exist which explains the lack of documentary evidence. Namely, Defendant contends that he "made a business decision not to proceed with commercial activities related to the mark until a legal dispute over the mark was resolved."[10] (Opp. to MSJ at 8 (citing Def. Depo. at 100-101).) In *L.C. Licensing*, however, the Board found that "[a]pplicant's decision to forgo a business model until after the opposition is decided does not explain his failure to have any documents whatsoever at the time the application was filed that showed an intent to use the mark." 86 U.S.P.Q.2d at 1892. Thus, the Board found that, because there was no documentary evidence of his intent to use at the time of application, summary judgment for the opposer was appropriate. *Id.* Thus, this argument fails.[11]

At oral argument, Defendant argued that the Court must look at the objective evidence produced at the time of *each* individual application, which ranged from November 2006 to June 2007. The Court agrees that this is the appropriate approach, but finds that doing so does not change the Court's overall analysis. The bottom line is that Defendant has produced only seventeen pages of documentary evidence, *none* of which support Defendant's bona fide intent to use any of the Marks. Again, Defendant argues that his statement regarding the actions he

---

[10] Specifically, when asked whether there were any current business activities using the marks, Defendant responded: "Because since the – since the lawsuit, I am not selling [the merchandise]. I'm not doing like this. But I have them. I have given it to my friends and stuff, but no money involved or anything, because I waiting this thing to finish, because of this lawsuit here they created." (Def. Depo. at 101.)

[11] In support of his "business decision" argument, Defendant cites to *Nautica Apparel, Inc. v. Crain,* 2001 WL 1182881 (T.T.A.B. Sept. 21, 2001). However, the TTAB stated that *Nautica* is not to be cited as precedent of the TTAB and therefore of no help to the Court. Instead, the Court follows the rationale in *L.C. Licensing*, which is precedent of the TTAB and therefore highly persuasive to the Court. Moreover, even if the Court were to recognize the rationale in *Nautica*, the decision does not explain the lack of objective evidence at the *time of the application*, which is the applicable time frame.

allegedly took shortly after he filed his November applications, such as finding a location and meeting with a designer, is evidence that he did intend to use the marks in commerce. Thus, Defendant argues, even if the November and December 2006 applications fail for lack of objective evidence at the time of the applications, the June 2007 applications should not fail because such objective evidence had been generated by this time. But, separating the applications by date does not make a difference – the alleged activities and merchandise purchased by Defendants have not been produced before this Court, nor has a receipt, bill, or any other objective evidence. Defendant saying such objective evidence exists is simply not enough to meet his burden to defeat the motion for summary judgment.

Moreover, even if the Court were to find that such evidence existed at the time of the June 2007 applications, the common law priority of use doctrine would still place the rights with Plaintiff. "It is axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC International, Ltd.*, 96 F.3d 1217 (9th Cir. 1996). "When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark," and therefore "the registrant is granted a presumption of ownership." *Id.* at 1219. "However, the non-registrant can rebut the presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration - in other words, if the non-registrant can show that he used the mark in commerce first, then the registration will be invalidated." *Id.* at 1220. The non-registrant's burden is a preponderance of the evidence. *Id.* at 1219. The record regarding Plaintiff's implementation of its business plan using the marks illustrates that Plaintiff established the requisite use in commerce around January or February 2007.[12] Thus, Defendant's June 2007 applications are invalidated based on the

---

[12] The record shows that after announcing and then formally adopting the name "the City of Carlsbad" and using the acronym, "TCAC," Plaintiff started ordering and distributing marketing materials using the same. (Mem. ISO MSJ at 11-12.) Further, in January, Plaintiff provided the name for publication on a San Diego golf map. (*Id.* at 12.) The next month, "the City marketed its golf course through the Carlsbad Chamber of Commerce and San Diego Golf Expo under the name 'The Crossings at Carlsbad.'" (*Id.*) Also in February, the City ordered various merchandise which had the marks and/or logo on them. (*Id.*) "On August 2, 2007, the golf course's pro shop began selling clothing, golf balls, and other items bearing the Marks and the Logo. The golf course opened for business on August 11, 2007." (*Id.*) Accordingly, it appears that the first actual use of the marks and logo in commerce is around January or February 2007, when Plaintiff began marketing and setting forth its business plan.

priority of use doctrine even if we find the intent to use.

Accordingly, the Court finds that Defendant has not produced any objective evidence of his bona fide intention to use the marks in commerce at the time of any of his applications to use the marks. Thus, the Court **GRANTS** Plaintiff's motion for partial summary judgment.

## CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiff's motion for partial summary judgment, finding that Defendant has not established his bona fide intent to use the marks in commerce at the time of his applications. Thus, the Court **DECLARES** Plaintiff the rightful owner of the trademarks and logo at issue in the present case. The Court therefore **AUTHORIZES** the United States Patent and Trademark office to **DENY** registration of Defendant's trademark applications, Serial Nos. 77/054111, 77/054126, 77/061706, 77/202046, 77/2037554, and 77/284659, and **REGISTER** Plaintiff's trademark applications, Serial Nos. 77/230889, 77/230864, 77/240017, 77/238790, 77/235270, 77/326199, 77/263971, 77/263925, and 77/263996.

IT IS SO ORDERED.

DATED: October 20, 2009

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge